UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JIA CHEN A/K/A KEVIN CHEN

                Plaintiff,

     -against-

ANTEL COMMUNICATIONS, LLC,

SHENZHEN HIPAD
TELECOMMUNICATION TECHNOLOGY
CO., LTD,

HANGZHOU MANKO TECHNOLOGIES
LTD.

YONG HANG ZOU, and LOUIS
ANTONIOU

                Defendants.
------------------------------------------------------------X

**ORDER**
14-CV-6629 (SJF)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   SEP 3 0 2015   ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

     Defendant Antel Communications, LLC (Antel), and its chief executive officer,

defendant Louis Antoniou, move for dismissal of plaintiff's complaint pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motion is

granted in part, and denied it in part.

I.    FACTUAL BACKGROUND

     For purposes of this motion, the Court accepts as true the following allegations found in

the complaint. Defendants Shenzhen Hipad Telecommunication Technology Co., Ltd.

(Shenzhen Hipad) and Hangzhou Manko Technologies, Ltd. (Hangzhou Manko) are Chinese

corporations which are both wholly owned by defendant Yong Hang Zou. Shenzhen Hipad and

Hangzhou Manko employed plaintiff in China for several years as their general manager of

overseas operations. Pl.'s Compl. 4-5, ¶¶15–17, 26–27. In either January or February 2014, Zou

decided to transfer plaintiff to the United States to work at Antel, the United States affiliate of Shenzhen Hipad and Hangzhou Manko, as its vice-president of operations. Pl.'s Compl. 5, ¶28– 29.

On March 6, 2014, plaintiff and Antel executed an "Appointment Contract" ("March 6, 2014 Appointment Contract" or "Appointment Contract"). Def.'s Br., Ex. A. This two-page agreement provided that Antel would employ plaintiff as its vice-president of all of Antel's operations, and those of its "sub-companies, including but not limited with [sic] Administrations, HR, Finance & Accounting, sales & Marketing, Sourcing & Purchasing, Technology & Projects, IT & Logistics, etc." for a term beginning on March 20, 2014, and ending on March 19, 2016. Def.'s Br., Ex. A. The Appointment Contract obligated Antel: (1) to pay plaintiff an annual salary of $200,000, half to be paid in the United States, and the other half paid in China; (2) to provide health and medical insurance, accommodation, food, car rent, and reimbursement for travel and cellular telephone expenses; (3) to transfer "3% of the company physical stock . . . freely as the welfare [sic]."; and (4) to pay a bonus, and provide paid home and annual leave. Def.'s Br., Ex. A. The Appointment Contract concluded, "To accept this offer, [plaintiff] and [Antel] shall sign this job appointment contract where indicated below," which the parties did. Def.'s Br,. Ex. A.

On March 21, 2014, the parties executed a more comprehensive "Employment Agreement" (March 21, Employment Agreement). Def.'s Br., Ex. B.[1] Although this agreement also provided that plaintiff would serve as Antel's vice-president of operations for a two-year

---

[1] Plaintiff refers to the "Appointment Contract" as the "Employment Agreement," and appears to refer to the March 21, 2014 Employment Agreement as the "Employment Agreement, as amended." Pl.'s Compl. 15, ¶ 90.

2

employment term beginning in March 2014, it differed from the Appointment Contract in that:
(1) it set a $100,000 base annual salary, plus "the same benefits afforded to other executive staff
of the Company," (2) it did not contain a share-transfer provision, (3) it limited reimbursement to
expenses incurred "in or about the performance of [plaintiff's] normal and regular duties." In
addition, Paragraph 5(c) of the Employment Contract provided that Antel could terminate
plaintiff without cause upon thirty (30) days' notice, and Paragraph 5(b) allowed Antel to
terminate plaintiff immediately with cause, in certain enumerated instances. Def.'s Br., Ex. B.

　　　The Employment Contract also contained the following merger clause:

> This Agreement constitutes the entire agreement between the parties concerning
> the subject matter hereof and supersedes all prior and contemporaneous
> agreements, if any, between the parties.

　　　Plaintiff sold most of his personal effects in China, and moved to the United States, at a
cost of more than $33,000. Pl.'s Compl. 6, ¶ 34-35. Shenzhen Hipad and Hangzhou Manko paid
his salary between April 2014 and July 2014. Pl.'s Compl. 7, ¶ 38.[2]

　　　On September 8, 2014, defendants terminated plaintiff, allegedly without cause or notice.
Pl.'s Compl. 8, ¶ 44. His last date of employment was September 30, 2014. Pl.'s Compl. 8,
¶ 45. He alleges that Antel "failed to pay half of [his] wages in August 2014 and half in
September 2014," and failed to reimburse his travel expenses between April 2014 and 2014.
Pl.'s Compl. 8, ¶¶ 45-46.

　　　On November 11, 2014, plaintiff filed a complaint seeking monetary and declaratory
relief. Count One alleges that defendant breached the Appointment Contract "by unilaterally

---

[2] Plaintiff and defendants Zou and Antoniou also executed a "Share Transfer Agreement for a three
percent (3%) stake in Antel." Pl.'s Compl. 7, ¶ 37.

terminating the Plaintiff without cause prior to the end of [its] term." Pl.'s Compl. 9–10, ¶¶ 51, 53. It alleges damages of his base salary of "$200,000 per year from September 2014 to March 19, 2016, together with additional benefits, unreimbursed travel expenses, unpaid wages, bonuses, a 3% equity share of stock in Antel, and the value of Plaintiff's paid vacation." Pl.'s Compl. 10–11, ¶ 61.

Counts Two, Three, and Four assert quasi-contractual claims for promissory estoppel, unjust enrichment, and breach of implied covenant of good faith and fair dealing, respectively. Pl.'s Compl. 11–13, ¶¶ 62–78. Count Five alleges violations of New York State Labor Laws, and seeks damages in the amount of plaintiff's unpaid compensation, plus interest and attorney's fees. Pl.'s Compl. 13, ¶¶ 79–81. Count Six seeks payment of unpaid "gap time" wages pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216. Pl.'s Compl. 14, ¶¶ 82–86. Count Seven seeks a declaration that based on defendants' conduct, plaintiff's contractual obligations are terminated. Pl.'s Compl. 14–15, ¶89.

## II.    DISCUSSION

### A.    Rule 12(b)(6)

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* at 679. The court is limited "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell,*

*Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). "Dismissal is appropriate when 'it is clear from the face of

the complaint . . . that the plaintiff's claims are barred as a matter of law.'" *Parkcentral Global*

*Hub Ltd. v. Porsche Auto. Holdings SB*, 763 F.3d 198, 208–09 (2d Cir. 2014) (quoting *Conopco,*

*Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

      B.    Plaintiff's Claims

      Plaintiff's bases his claims on the March 6, 2014 Appointment Contract, which he argues

is the only operative contract. Pl.'s Compl. 5–6, ¶ 31; Pl.'s Br. 11–12. The Court disagrees.

The March 21, 2014 Employment Agreement, by the terms of its merger clause, superseded the

March 6, 2014 Appointment Contract. Def.'s Br., Ex. B. It, therefore, became the parties'

exclusive agreement. *E.g.*, *Indep. Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184,

1195 (S.D.N.Y. 1996) (explaining that under New York law, "[p]rior agreements and

negotiations are deemed to merge and be subsumed in a later written agreement") (citing *Shubin*

*v. Surchin*, 280 N.Y.S.2d 55, 59 (App. Div. 1967)) (citations omitted).

      Although plaintiff admits that he executed the March 21, 2014 Employment Agreement,

he argues—but does not plead— that defendant "fraudulently represented to" him that he needed

to sign it as part of his visa-application process, and that he did not intend to be bound by it.

Pl.'s Br. 8, 12–13. However, under New York law, a party's intent to be bound is a question of

law in the first instance, and a court must look to the language of the contract itself, and not a

party's subjective intent. *See Four Seasons Hotels Ltd. v. Vinnik*, 515 N.Y.S.2d 1, 5–6 (App.

Div. 1987) ("[T]he question is to be decided by the court if determinable from the language

employed in the written instrument, and if not so determinable . . . then by the finder of the

facts.") (citations omitted). A court may treat as conclusive a written contract's indication of the

5

parties' intent to be bound. *See Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005). Paragraph 13 of the March 21, 2014 Employment Contract expresses an unambiguous mutual intent to be bound. Def.'s Br., Ex. B. Moreover, plaintiff did not plead fraud with particularity. FED. R. CIV. P. 9(b). As the March 21, 2014 Employment Agreement governed the terms of plaintiff's employment with Antel, plaintiff may not maintain claims for breach of the March 6, 2014 Appointment Contract.

A related issue is whether the Court may consider the March 6, 2014 Appointment Contract and the March 21, 2014 Employment Agreement as part of the pleadings on this Rule 12(b)(6) motion. Plaintiff did not attached a copy of the March 21, 2014 Employment Contract, does not specifically refer to its provisions, does not specifically refer to it in his complaint, and argues, therefore, that the Court may not consider it on this dismissal motion. Pl.'s Br. 10–11.

A court considering such a document on a Rule 12(b)(6) motion must be satisfied that no dispute exists as to its authenticity or accuracy, and must be satisfied that there are no material issues of fact regarding its relevance. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (citations omitted). Plaintiff does not dispute the March 21, 2014 Employment Agreement's accuracy, its authenticity, or that he executed it. Pl.'s Br. 8. The Court finds this contract integral to the issues raised in the complaint and treats it as part of the pleadings, notwithstanding the fact that plaintiff did not attach it as an exhibit. *E.g., Loftus v. Se. Pennsylvania Transp. Auth.*, 843 F. Supp. 981, 983 (E.D. Pa. 1994) (treating collective bargaining agreement appended to defendant's dismissal motion as part of the pleadings because agreement formed the basis of plaintiff's claims). The Court treats defendant's motion as a dismissal motion under Rule 12(b)(6), and not a Rule 56 summary judgment motion, and does not consider the e-mails

6

appended to plaintiff's opposition papers as part of the "pleadings" under Rule 10(c). *E.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010).

### 1. Claims against Antoniou.

Under New York law, an individual who signs a contract on behalf of a corporation is not personally liable, unless the individual expressly assumes personal liability. *E.g.*, *Metro. Switch Bd. Co. v. Amici Associates, Inc.*, 799 N.Y.S.2d 531, 531 (App. Div. 2005); *San Diego Cnty. Employees Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 128 (S.D.N.Y. 2010) (citations omitted). Although plaintiff argues that Antoniou is personally liable, he has failed to come forward with factual allegations to warrant piercing the corporate veil. *See EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (explaining that "[t]o avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim," and plead them according to the heightened pleading requirements of FED. R. CIV. P. 9(b)) (citations omitted). Antoniou signed the March 21, 2014 Employment Agreement as Antel's Chief Executive Executive Officer. Def.'s Br., Ex. B. Neither the contract, nor the pleadings suggest that he ever intended to assume personal liability. Plaintiff's claims against defendant Antoniou are, therefore, dismissed.

### 2. Breach of Contract (Count One).

Rather than acknowledging the March 21, 2014 Employment Agreement, he characterizes it as an "amend[ment]" to the March 6, 2014 Appointment Contract. Pl.'s Compl. 15, ¶ 90. Plaintiff's Count One alleges multiple breaches by Antel: (1) failure to pay a bonus, severance, and moving expenses; (2) failure to pay post-termination salary and benefits; (3) termination without cause or notice; (4) failure to pay travel and incidental expenses; and (5)

failure to pay vacation time. To the extent that plaintiff's breach of contract claims arise out of the March 21, 2014 Employment Agreement, defendants' dismissal motion is granted in part, and denied in part as to Count One.

To survive a motion to dismiss, a breach of contract claim under New York law must allege facts to show: "(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of the contract by defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 177 (2d Cir. 2004); *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC,* 921 N.Y.S.2d 260, 264 (App. Div. 2011)). For the reasons articulated above, the Court finds that the March 21, 2014 Employment Agreement constituted a valid employment contract between Antel and plaintiff that superseded the Appointment Contract. There is no dispute that plaintiff performed under the contract by working as Antel's vice-president of operations.

However, plaintiff pleads that Antel breached their agreement by failing to pay severance provided by "Article 3," and for failing to pay a bonus identified in "Article 4," Pl.'s Compl. 10, ¶ 54, 57. Moreover, he alleges damages in the amount of $33,000, representing moving expenses. Pl.'s Compl. 49. However, the March 21, 2014 Employment Agreement does not provide for moving expenses, severance, or a bonus. To the extent that Count One seeks damages for Antel's breach in failing to pay these expenses, it is dismissed.

Plaintiff also seeks damages in the amount of $300,000, reflecting post-termination salary for the balance of the contractual term, from October 2014 to March 2016, as well as benefits in the amount of $73,000 for the balance of the contractual term ending in March 2016. Pl.'s Compl. 9, ¶ 49. Plaintiff cannot recover either amount for the balance of the contractual term, however, because Paragraph 5(e) of the March 21, 2014 Employment Agreement limits his

8

recovery to base salary until the termination date.  To the extent that Count One seeks recovery for benefits and salary for the balance of the contractual term, it is dismissed.

Plaintiff has also pleaded that Antel terminated him without notice and without cause. Pl.'s Compl. 8, ¶ 44.  "[W]hen an employee's protection has been diminished by a late notice of termination or no notice at all, New York courts have required the employer to pay the employee's salary for the full notice period."  *Holt v. Seversky Electronatom Corp.*, 452 F.2d 31, 34 (2d Cir. 1971); *Delvecchio v. Bayside Chrysler Plymouth Jeep Eagle, Inc.*, 706 N.Y.S.2d 724, 726 (App. Div. 2000).  Paragraph 5(b) of the March 21, 2014 Employment Agreement required Antel to give plaintiff thirty (30) days' notice before terminating him without cause. Def.'s Br., Ex. B.  Accepting as true plaintiff's allegation that Antel terminated him without cause or notice, he has stated a claim for breach of contract, and may recover any unpaid contractual salary for the notice period set forth in Paragraph 5(b).

Likewise, insofar as plaintiff alleges a breach and damages from Antel's failure to pay for travel and incidental expenses from April through July 2014,  Pl.'s Compl. 8, ¶ 46, Paragraph 4(d) of the March 21, 2014 Employment Agreement required Antel to reimburse plaintiff for these expenses so long as there were "incurred by [him] in or about the performance of his normal and regular duties[.]"  Def.'s Br., Ex. B.  The Court cannot determine from the pleadings alone whether any of his unreimbursed expenses fell under Paragraph 4(b), and leaves plaintiff to his proofs as to his entitlement to reimbursement for any travel or incidental expenses.

Finally, plaintiff seeks to recover the monetary value of thirty (30) days of paid vacation. Under New York law, "[a]n employee may, under certain circumstances, be entitled to recover for unused vacation and sick time when he or she is discharged without being given the

9

opportunity to use the time and without being compensated for its monetary value." *Andruzzi v. Cnty. of Nassau*, 826 N.Y.S.2d 324, 325 (App. Div. 2006). Paragraph 4(b) of the March 21, 2014 Employment Agreement guaranteed plaintiff vacation days in accordance with "Company Policy." Def.'s Br., Ex. B. Plaintiff, therefore, has plausibly alleged that he may recover the monetary value of his unused vacation time, if any. Because nothing in the pleadings sheds any light on Antel's vacation policy or plaintiff's use of vacation time, defendants' motion is denied as to these claims.

### 3.   Quasi-Contractual Claims (Counts Two and Three)

Having found the existence of a valid contract between the parties, the Court finds that plaintiff's quasi-contractual claims for promissory estoppel and unjust enrichment fail to state a claim. "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (affirming dismissal of claim for unjust enrichment because under New York law, existence of valid contract governing same subject-matter precludes recovery in quasi-contract) (citations omitted).

Plaintiff's promissory estoppel and unjust enrichment claims mirror his breach of contract claim. Plaintiff's promissory estoppel claim, Count Two, pleads that he detrimentally relied on Antel's promises to him regarding his compensation and benefits. Pl.'s Compl. 11, ¶ 63. Likewise, his unjust enrichment claim, Count Three, pleads that he conferred "a substantial benefit" on Antel through his work, and that it would be inequitable not to compensate him in

accordance with Antel's promises and their contractual arrangement. Pl.'s Compl. 12, ¶¶ 69, 73. In essence, both claims seek enforcement of Antel's promises regarding compensation and benefits, which are governed by the March 21, 2014 Employment Agreement. Accordingly, Counts Two and Three are dismissed.

> 4.    Duty of Good Faith and Fair Dealing (Count Four).

Similarly, plaintiff's claim for breach of the duty of good faith and fair dealing, Count Four, fails as a matter of law. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir.2002) (quotation marks omitted). "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Id.* at 81. "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 434 n. 17 (2d Cir. 2011). Plaintiff's complaint pleads no additional facts to suggest a distinct breach of the implied duty of good faith and fair dealing, only that defendants "breached [it] by, among other things, repeatedly reaping the financial benefits of [plaintiff's] work with without compensating in accordance with the Employment Agreement." Pl.'s Compl. 13, ¶ 77. As plaintiff's claim for breach of the duty of good faith and fair dealing is identical to his breach of contract claim, Count Four is dismissed.

11

5.    New York Labor Law (Count Five).

Plaintiff's claim pursuant to Article 6, sections 191 and 198, of the New York Labor Law seeking unpaid wages and unreimbursed expenses for defendants' alleged breach of contract fails because, as a vice-president, plaintiff was not covered by these provisions. Pl.'s Compl. 13, ¶¶ 79–81. While an "executive" may recover if he or she proves a substantive violation of Article 6's provisions, "employees serving in an executive, managerial or administrative capacity do not fall under section 191 of the Labor Law and, as a result, those individuals are not entitled to statutory attorney's fees under section 198(1–a) if they assert a successful common-law claim for unpaid wages." *Pachter v. Bernard Hodes Grp., Inc.*, 891 N.E.2d 279, 283 (N.Y. 2008). Here plaintiff pleads that he served as Antel's vice-president of operations, and therefore he was an "executive" under New York Labor Law. Pl.'s Compl. 5, ¶28–29; *see, e.g.*, *Carlson v. Katonah Capital, L.L.C.*, 814 N.Y.S.2d 889 (Sup. Ct. 2006) ("An employee qualifies as an executive if he or she "exercises independent judgment" in performing his or her duties."). He earned more than nine hundred dollars per week ($900). Pl.'s Compl. 10–11, ¶ 61. Def.'s Br., Ex. B. Accordingly, his fifth count fails to state a claim under sections 191 and 198 of the New York Labor Laws, and is, therefore dismissed. *See Eden v. St. Luke's-Roosevelt Hosp. Ctr.*, 96 A.D.3d 614, 615, 947 N.Y.S.2d 457, 459 (2012) ("As a professional earning more than $900 a week (Labor Law § 190 [7]), plaintiff is "expressly excluded" from the protections of Labor Law § 191") (citing *Pachter,* 891 N.E.2d 279).

6. FLSA (Count Six).

As, plaintiff has abandoned his FLSA claim, Count six is dismissed. *Cf. Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008) (explaining that court need not perform independent analysis of legal merits of abandoned claim on 12(b)(6) dismissal motion).

7. Declaratory Judgment (Count Seven).

Count Seven seeks a judgment "declaring that [defendants] have violated plaintiff's rights pursuant to the Employment Agreement, the FLSA, and [New York Labor Law]" and declaring plaintiff's obligations to defendants arising out of their contractual agreements and their employer–employee relationship terminated. Pl.'s Compl. 15–16, ¶¶ d, e. For the reasons already stated, the Court grants defendants' motion, and dismisses plaintiff's claims for declaratory relief insofar as they seek a declaratory judgment that defendants violated plaintiff's rights under the FLSA, New York Labor Law, or the March 21, Employment Agreement for their failure to pay a bonus, severance, moving expenses, and post-termination salary and benefits for the balance of the contractual term. Otherwise, the Court denies defendants' motion as to Count Seven.

8. Attorney's Fees, Punitive Damages.

Finally, plaintiff seeks an award of both attorney's fees and punitive damages. However, New York law does not permit fee-shifting in breach of contract cases, unless specifically provided in the contract, *e.g.*, *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 344 N.E.2d 391, 394 (N.Y. 1976), and does not allow punitive damages, unless the breach would constitute an independently actionable fraud involving a "high degree of moral turpitude." *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 634 N.E.2d 940, 943 (N.Y. 1994) (citations and internal

13

quotations omitted).  Because the March 21, 2014 Employment Agreement contains no fee-shifting provision, and plaintiff has not pleaded fraud, he has not stated a claim for attorney's fees or punitive damages.

III.    CONCLUSION

For the foregoing reasons, defendants' dismissal motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted in part, and denied in part.

**SO ORDERED.**

s/ Sandra J. Feuerstein<br>Sandra J. Feuerstein<br>United States District Judge

Dated: September 30, 2015
      Central Islip, New York

14